

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

GROVER SELLERS
XHIXXXXXXON
ATTORNEY GENERAL

Honorable J. P. Gibbs, Commissioner
Casualty Insurance Division
Board of Insurance Commissioners
Austin, Texas

Dear Mr. Gibbs:

Opinion No. 0-5896
Re: Whether an employee of the
State Insurance Commission, who
performs certain duties working
full time, as required by law,
in that particular position may
draw compensation from the State
for this additional work before
or after the hours he works in
the regular position.

You write us as follows:

"In my department, I am confronted with a
very serious problem in that after March 1, 1944,
at least one of the members of my technical
staff in a key position will no longer be with
me because he is entering the armed services.
For quite sometime, it has been a real problem
for my small department to operate and try to
supervise as is required by law. The casualty
business during the past year amounted to ap-
proximately $60,000,000 in the State of Texas.
Even in ordinary times, it was difficult to find
available men qualified in actuarial science.
It is absolutely impossible, insofar as I can
determine, for me to obtain anyone qualified in
this particular field of insurance which is ab-
solutely essential to the performance of the
requirements imposed upon my department by law.

"To give you a very specific case, the Head
of my Automobile Insurance Section, besides his
actuarial capacity, must have the ability to
know contracts and be able to draw up instruments
to afford coverage required by the policyholders
who pay normally $30,000,000 in automobile in-
surance premiums. This department, as you know,
is required to prescribe standard policy forms

for workmen's compensation and automobile insurance together with all the endorsements to be used in connection with the writing of such business. We now have more than 200 endorsement forms alone in the Automobile Insurance Section. The Head of that section has been called into the armed services, and I have pledged my word, as has been done by business and governmental institutions generally, to hold the positions for the boys entering the armed services in order that they might occupy such positions if and when they return. To my way of thinking, taking these boys back into their positions when they return is a fundamental American principle.

"The members of my technical staff during the last year particularly have worked faithfully and diligently to perform the duties required. This serious problem presents to me the question of whether I can pay the present Head of the Workmen's Compensation technical staff who is highly qualified for either of these two key positions part of the salary appropriated for the Director of Automobile Insurance based on the number of overtime hours he puts in on this job and at the same time pay him the full amount of the appropriation for the job he occupies principally as Chief Actuary of the Workmen's Compensation Section to which he would give at least eight hours per day of his services.

"Section 15(b) of the current appropriation bill (Senate Bill 332) passed by the last session of the Legislature is somewhat ambiguous. I should like, therefore, for you to advise me on the following question:

"Could an employee who performs a certain duty and working the full time as required by law in that particular position draw compensation for this additional work after or before the hours he works in the regular position? The additional work performed after hours is not in line with his regular work.

"As this is a very urgent and important matter, I respectfully request your opinion at an early date."

Section 33 of Article XVI of the Constitution reads in part as follows:

"The accounting officers of this State shall neither draw nor pay a warrant upon the Treasury in favor of any person, for salary or compensation as agent, officer or appointee, who holds at the same time any other office or position of honor, trust or profit, under this State or the United States, except as prescribed in this Constitution. * * * * *."

We think your question construed in the light of the specific illustration given by you, should be answered in the negative.

The director and actuary of your Motor Vehicle Insurance Section (Item 26 in the current appropriation bill) undoubtedly is an agent or appointee, within the meaning of Section 33, above quoted, whose compensation is fixed in the appropriation act at $4000.00 per annum.

The other position mentioned by you, the head of the Workmen's Compensation technical staff -- actuary and chief clerk -- is likewise a position as an agent or appointee, whose compensation is fixed at $4000.00 per annum by the appropriation act, and both are positions of honor, trust and profit. So that it would follow perforce of the express terms of the Constitution that one occupying either of these positions would be forbidden to receive compensation from the State for services performed in the other. In truth, while occupying both positions he could be paid for neither.

The situation and principle here discussed has been thus stated by First Assistant Attorney General, C. M. Cureton, afterward Chief Justice of the Supreme Court, as follows:

"An analysis of the above quoted section of the Constitution results in the following: That the accounting officers of this State are prohibited from drawing or paying a warrant upon the treasury in favor of any person for (a) salary, (b) compensation; as (1) agent, (2) officer, (3) appointee, if such person at the same time holds any other (1) office, (2) position of honor, (3) position of trust, or (4) position of profit, under this State or the United States.

"Mr. Mayes is the Lieutenant-Governor of this State, and under the Constitution as above quoted

and discussed that is an office.  It is likewise
a position of honor and trust, and while it could
hardly be said, owing to the very nominal salary
paid, that it is a position of profit, yet there
is a compensation attached to the office of Lieu-
tenant-Governor, which, be it great or small, is
intended as a remuneration for the time devoted
to the office.

"It is very clear, therefore, that Mr. Mayes,
so long as he is Lieutenant-Governor, could not
under the Constitution draw pay from the State,
as (1) agent, (2) officer, (3) appointee of the
State.

"As we have above endeavored to show that a
professor in the University of Texas is an ap-
pointee, or in a limited sense an agent, there-
fore, Mr. Mayes could not draw a salary from the
State as Professor of Journalism in the University.

"The converse of the above proposition is
also true, and, therefore, Mr. Mayes, so long as
he was the agent or appointee of the State as a
Professor of Journalism in the University, could
not draw his pay as Lieutenant-Governor of the
State, that being an office within the meaning of
the Constitution.

"Therefore, should Mr. Mayes accept the posi-
tion of Professor of Journalism in the University
and at the same time hold and exercise the duties
of the office of Lieutenant-Governor, he could
not draw pay for either such office or such posi-
tion."  -- Opinions of Attorney General 1912-1914,
p. 880.

Further analyzing the Constitution and expounding its
meaning as to those servants of the State coming within its
scope, that opnion declares:

"The State can only act through representatives,
and such representatives are divided into two classes
primarily.  The first class is that of officers, who
may be either elected by a vote of the people or re-
ceive their commissions by appointment by virtue of
some provision of the Constitution or statute, who
take the oath of office and are generally required
to enter into bond for the faithful performance of
their duties   -- and such other obligations as are

imposed by the statute and who exercise some function of government.

"The second class in the broader sense designates all other servants of the government as employees of the government or some of its agencies or institutions, who hold their position by reason of contract made and entered into by and between such person and some officer or agent of the State government who is authorized or directed to make such contract by some provision of the Constitution or statutes of the State. Such employee takes no oath and executes no bond and may be discharged at the pleasure of the appointing power. The tenure of his position is fixed by the contract made and entered into between such employee and the appointing power, or it may terminate according to the contract at the pleasure of the appointing power.

"Under one or the other of the above two classifications a professor in the University must fall; that is, he must either be an officer of the State or he must be an employee, and we will now direct our attention to fixing the status of a professor as one or the other." -- Opinions of Attorney General 1912-1914, p. 874.

That opinion has often been cited and quoted, and we think it represents the true construction of the Constitution.

We appreciate the stress of present conditions as it affects the administration of the affairs of your department, to be sure, but exigencies of whatever magnitude will not justify violation of a plain constitution.

Very truly yours

ATTORNEY GENERAL OF TEXAS

OS-MR-wc

BY s/Ocie Speer
Ocie Speer
Assistant

APPROVED MAR 8, 1944
s/Geo. P. Blackburn
Acting--ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By s/BWB Chairman